STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| In re: Binkhorst Lake Access | } | Docket No. 286-12-07 Vtec |
| (Appeal of Wool) | } | |

Decision and Order on Renewed Motions for Summary Judgment

Appellants Michael and Martha Wool appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Charlotte, upholding the Zoning Administrator's determination that certain work performed on Appellees Mark and Julie Binkhorst's property was "exempt from permitting." Appellants are represented by Hobart F. Popick, Esq.; Appellee is represented by Stuart M. Bennett, Esq.; and the Town is represented by William E. Flender, Esq.

In March of 2009, the Court issued a decision and order on the parties' motions for summary judgment, which resolved Question 1 and several issues raised by Questions 2, 3, and 4 of the Statement of Questions. That decision concluded that a number of facts were either in dispute or had not been provided to the Court, so that the remainder of Questions 2, 3, and 4 could not be resolved at that time. In re: Binkhorst Lake Access, No. 186-12-07 Vtec, slip op. at 5–8. (Vt. Envtl. Ct. Mar. 9, 2009) (Wright, J.). The parties requested an opportunity to submit additional facts and arguments to the Court by motion, and submitted a Joint Supplemental Statement of Undisputed Material Facts to the Court. Appellees submitted a Supplemental Statement of Disputed Material Facts, and Appellants submitted a supplemental memorandum in support of their motion.

The following facts are undisputed unless otherwise noted, in addition to the facts as described in the March 2009 decision.

1

The narrow parcel of land at issue in this appeal, also known as the "Windmill" lot ("the property"), is located in the Shoreland zoning district between Hills Point Road and Lake Champlain. It is approximately 350 feet in length, running west from Hills Point Road to Lake Champlain. The property gradually widens from only approximately 50 feet in width at Hills Point Road to approximately 100 feet in width at Lake Champlain.

Beginning in 2007, Appellees engaged in the following four categories of contested activities on the property: landscaping, electrical service to the pump house, improvement to the traveled way on the property, and installation of a culvert.

Appellees performed landscaping on the property, including pruning and removing trees, shrubs, and underbrush; placing and grading topsoil; and planting grass, plants, and trees. All of this landscaping activity occurred more than 100 feet from the Lake Champlain shoreline.

A pump house for a water supply system serving persons not party to this appeal is located on the property within 100 feet of the shoreline. Prior to the work at issue in this appeal, the electrical service to the pump house was connected by a electrical wire to an existing electric service pedestal on Hills Point Road. By 2006, that electrical wire had partially surfaced and had become a hazard. In 2006, Appellees contracted to have a trench dug from the pump house along the north side of the property, in order to bury the wire in conduit. However, the wire was not in fact buried at that time, leaving the trench open through the winter of 2006–07. During this period, the trench eroded to create a shallow ditch running along the north side of the property, causing some flooding in the pump house and in the basement of the house on the adjoining property to the south. As part of the work at issue in this appeal, in 2007 Appellees had a trench excavated in which a PVC electrical conduit containing a new electrical wire was buried, running from the electric service pedestal on Hills Point Road to the pump house.

2

Prior to the work at issue in this appeal, the property was vegetated with trees, bushes, and underbrush, and contained an unimproved traveled way with a grass surface, extending from Hills Point Road to the lake. Appellees had removed debris from the lot prior to 2006, including the remains of a windmill and rails from a boat launching system. The traveled way was used occasionally by pedestrians or vehicles for access to the pump house and to the lake shore. Those served by the water supply system have an easement over the property to access the pump house. The traveled way was in need of regrading and reseeding to maintain it in useable condition. In the work at issue in this appeal, Appellees improved the surface of the traveled way by installing a so-called "soft" road surface, which consisted of covering the traveled way with gravel and then topping it with a layer of topsoil and grass. This work began at a point near Hills Point Road and extended for approximately 150 feet toward the lake. Since the distance between Hills Point Road and the shoreline is 350 feet, and the work on the traveled way only extended for 150 feet toward the lake, this activity did not extend within 100 feet of the shoreline of Lake Champlain.

Also prior to the work at issue in this appeal, an existing town culvert running under Hills Point Road emptied onto the property at the west side of the road. In order to address issues of flooding caused by the water draining onto the property through the existing town culvert, Appellees installed a new culvert running the length of the property, from the existing town culvert to a point located 50 to 75 feet from the lake shore. Installation of the culvert consisted of excavating a ditch, installing in the ditch a 15-inch culvert pipe the length of the ditch, and placing fill to cover the culvert and the ditch. The area around the lake end of the culvert was graded and a course of rip rap was laid from the end of the culvert to approximately 30 feet from the shoreline.

None of the work at issue in this appeal involved the cutting or removal of trees or shrubs within 100 feet of the shoreline of Lake Champlain.

Town of Charlotte Land Use Regulations

Under § 1.3(C) of the Town of Charlotte Land Use Regulations (Regulations), all "land development" must be specifically authorized by the Regulations, exempted from the Regulations under state statute or § 9.2,[1] or approved in accordance with § 2.3 (Application of District Standards). The March 2009 decision resolved that the work at issue constitutes "land development." See In re: Binkhorst Lake Access, slip op. at 5. The work must therefore qualify as exempt under § 9.2 or Appellees must apply for a zoning permit for it under § 9.3.

Uses and structures that are exempt from the Regulations under § 9.2(A) do not require a zoning permit or approval. Section 9.2(B) provides the mechanism for appealing a Zoning Administrator's exemption decision to the ZBA, as was done in the present case. The § 9.2(A) exemptions relevant to the work at issue in this appeal include: § 9.2(A)(1), exempting "normal maintenance and repair of existing structures, utilities and infrastructure which does not result in any change to the footprint or height of the building . . . or change in use"; § 9.2(A)(4), exempting "[m]inor grading and excavation associated with normal road, driveway, and parking area maintenance"; and § 9.2(A)(5), exempting "[l]andscaping, for example: installation of plants, soils, arbors, terraces, and patios."

In addition, because the property is located partially within 100 feet of the shoreline of the lake, any work done within that hundred-foot lakeshore buffer, whether or not it is exempt from the permit requirement, must comply with § 3.15(G) (Lakeshore Buffers). Under § 3.15(G), a vegetated buffer zone must be maintained within 100 feet of the shoreline of Lake Champlain. In order to maintain this lakeshore buffer, § 3.15(G) requires (1) "no cutting or removal of trees or shrubs" except with administrative review and approval in accordance with an approved shoreland

---

[1] All citations to section numbers are references to the Town of Charlotte Land Use Regulations unless otherwise noted.

management plan; allows (2) "[l]imited pruning of branches of trees" to maintain but not to enlarge existing cleared openings or views; allows (3) "cutting and removal of storm-damaged, diseased, or dead trees" if the Zoning Administrator has determined that they pose a hazard; and precludes (4) "dredging, draining, or filling of land along the shoreline" or "cutting or removal of wetland vegetation" except "in conformance with a shoreland management plan approved by the [ZBA]."

### Landscaping

The landscaping done on the property consisted of pruning and removing trees, shrubs, and underbrush; placing and grading topsoil; and planting grass, plants, and trees. As all of this activity occurred more than 100 feet from the lake shoreline, it is not subject to § 3.15(G).

Under § 9.2(A)(5), "[l]andscaping, for example: installation of plants, soils, arbors, and patios" is exempt from the Regulations. The landscaping work done by Appellees falls within this exemption and therefore does not require a zoning permit or approval.[2]

### Replacement of Existing Electrical Wire

To replace the existing electrical wire that posed a hazard after becoming exposed, a PVC conduit containing a new electrical wire was buried in a trench that ran from the existing electrical service pedestal near Hills Point Road to the existing pump house. Because the pump house is located within 100 feet of the shoreline, the electrical conduit extended into the lakeshore buffer area.

---

[2] In their memorandum in further support of their Motion for Summary Judgment, Appellants themselves stated that they "do not dispute that most, if not all, of the [landscaping] work constitutes 'landscaping' within the meaning of § 9.2(A)(5)."

5

Under § 9.2(A)(1), a permit is not needed for "[t]he normal maintenance and repair of existing structures, utilities and infrastructure which does not result in any change to the footprint or height of the building . . . or change in use." The existing wire running from the existing electric pedestal to the existing pump house was in need of maintenance and repair, as it had surfaced and become a hazard. The existing wire constituted an existing utility or infrastructure within the meaning of § 9.2(A)(1). By renewing and reburying the wire safely within a PVC electrical conduit, Appellants performed "normal maintenance and repair" of the electrical service to the pump house. That work did not change the footprint or use of the existing utility or infrastructure, or of the pump house. The maintenance and repair of the electrical service to the pump house therefore falls within the § 9.2(A)(1) exemption and does not require a zoning permit or approval.

Under § 3.15(G)(4), the "dredging, draining, or filling of land along the shoreline" is prohibited, "except in conformance with a shoreland management plan approved by the [ZBA]." The cutting and filling of a trench necessary to bury an electrical conduit, leaving the land at the same elevation and in the same condition as when the former unsafe electrical line had been buried in the ground, does not rise to the level of "dredging, draining, or filling of land along the shoreline." § 3.15(G)(4). The installation of the renewed electrical service in an electrical conduit therefore also satisfies § 3.15(G).

Improvements to Traveled Way

Appellees also renewed the surface of the traveled way by installing a so-called "soft" road surface, consisting of covering the existing traveled way with gravel and then topping it with a layer of topsoil and grass. This work began at a point near Hills Point Road and extended inward for approximately 150 feet. Its appearance after the work is that of a traveled way covered by a grass surface, as it was before the work.

6

This activity did not come within 100 feet of the shoreline of Lake Champlain, and therefore is not subject to § 3.15(G).

Under § 9.2(A)(4), "[m]inor grading and excavation associated with normal road, driveway, and parking area maintenance (including ditching, culvert replacement and resurfacing)" is exempt from the Regulations. The existing unimproved grass-surface traveled way required resurfacing for its normal maintenance, to repair normal wear caused by erosion and by its existing level of use for occasional vehicular and pedestrian access to the lake shore and to the pump house. The traveled way improvements completed by Appellee therefore fall within the § 9.2(A)(4) exemption and do not require a zoning permit or approval.

Administrative Requirements for Exempt Land Development

Question 4 of Appellants' Statement of Questions asks whether, "[i]f the land development in question falls within any of the [§] 9.2 exemptions, [Appellees have] complied with the administrative requirements under the [Regulations] in order to enjoy the benefit of such exemption?"

Neither of the parties specifically addressed this issue in any of the memoranda submitted to the Court. Nor have Appellants directed the Court's attention to any section of the Regulations containing any particular "administrative requirements" with which a party must comply in order to commence activity that is exempt under § 9.2. Rather, the Zoning Administrator is responsible under § 9.1(C) to "coordinate the development review process" and "to provide information and assist applicants." If a Zoning Administrator makes a decision as to whether a use is exempt, § 9.2(B) provides an appeal route. Otherwise, no other administrative requirement appears to apply to an exempt activity, and therefore there is nothing further that Appellee must do in regard to the landscaping, traveled way, and electrical conduit work that the Court has determined is exempt under § 9.2 of the Regulations.

7

Installation of Culvert

Appellees installed a new culvert on the property, conveying water from the culvert under Hills Point Road to a point located 50 to 75 feet from the shoreline. Prior to the installation of the culvert, stormwater traveled overland or in a ditch that had eroded on the property. The culvert installation required excavation of a ditch from Hills Point Road to a point 50 to 75 feet from the shoreline, placement of a 15-inch culvert pipe the length of the ditch, and placement of fill covering the ditch. Even though the ditch was filled in after placement of the culvert, the installation changed the conveyance of stormwater across the property and the location of its outfall, compared to the former overland flow. In addition, the area around the end of the culvert was graded and a course of rip rap was laid from the end of the culvert to approximately 30 feet from the shoreline.

Section 9.2(A)(1) exempts from the Regulations "[t]he normal maintenance and repair of existing structures, utilities and infrastructure which does not result in any change . . . in use." Regardless of whether the stormwater conveyed from the town culvert formerly traveled by sheet flow over the surface of the property, or had eroded an open ditch on the property, the installation of a 15-inch closed culvert to convey that stormwater to a different outlet on the property is entirely new infrastructure, not the maintenance or repair of existing infrastructure. § 9.2(A)(1). Therefore, the culvert installation is not exempt under § 9.2 and Appellees are required to apply for a zoning permit for that work.

All that is before the Court in the present appeal is the Zoning Administrator's determination that the work done was exempt. Any issues as to whether the culvert work qualifies for a permit or complies with the lakeshore buffer requirements of § 3.15(G) will be for determination in the first instance at the municipal level. See, e.g., In re Wright, No. 62-4-04 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 14, 2005) (Wright, J.)

8

(noting that it is for the Zoning Administrator to rule in the first instance as to what aspects of Appellants' business fall within the definition of home industry).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED as follows, concluding this appeal:

1. As to the landscaping work, the traveled way improvements, and the electrical conduit work, Appellants' Motion for Summary Judgment as to Questions 2, 3 and 4 is DENIED and Summary Judgment is GRANTED to Appellees as to Questions 2, 3, and 4, in that the landscaping and traveled way work did not occur within the lakeshore buffer; the electrical conduit work satisfied § 3.15(G) within the lakeshore buffer; the landscaping, traveled way, and electrical conduit work is exempt under § 9.2; and no further administrative requirements are applicable to the work that is exempt under § 9.2.

2. As to the culvert work, Appellants' Motion for Summary Judgment is GRANTED as to Questions 2 and 3, and Appellees' Motion for Summary Judgment is DENIED, in that the culvert work is not exempt under § 9.2 and must go through the municipal permitting process, and that any determination of whether the culvert work satisfies § 3.15(G) or any other regulations must be determined in the first instance in the context of that municipal permitting process.

Done at Berlin, Vermont, this 20th day of October, 2009.

_____
Merideth Wright
Environmental Judge